ELECTRONIC

**OCT 23, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## 08-20963-CR-COOKE/BANDSTRA

CASE NO. _____

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 2
18 U.S.C. § 982

**UNITED STATES OF AMERICA**

**vs.**

**JOSE G. MARTIN,**
**SAMUEL MOREJON,**
**RAFAEL PIEDRA, and**
**JOSE D. MARTINEZ,**

      **Defendants.**

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At various times relevant to this Indictment:

1.    Freemont Investment and Loan (hereinafter "Freemont Investment") was a financial institution doing business throughout the United States, including in the State of Florida, whose accounts were insured by the Federal Deposit Insurance Corporation.

2.    JP Morgan Chase Bank, NA (hereinafter "JP Morgan") was a financial institution doing business throughout the United States, including in the State of Florida, whose accounts were insured by the Federal Deposit Insurance Corporation.

3.    National City Bank was a financial institution doing business throughout the United States, including in the State of Florida, whose accounts were insured by the Federal Deposit

Insurance Corporation.

4.     Resmae Mortgage Corporation ("Resmae Mortgage") was a corporation doing business as a mortgage lender throughout the United States, including the State of Florida.

5.     Michigan Fidelity Acceptance Corp. d/b/a Franklin Mortgage Funding ("Franklin Mortgage") was a corporation doing business as a mortgage lender throughout the United States, including the State of Florida.

6.     First Franklin Loan Services was a corporation doing business as a mortgage lender throughout the United States, including the State of Florida.

7.     Endeavor Title Related Services ("Endeavor Title") was a Florida corporation incorporated on June 5, 2003, with its principal place of business listed as 8000 SW 117th Avenue, PH B3, Miami, Florida.

8.     Miami Title Services Corp. ("Miami Title") was a Florida corporation incorporated June 21, 2001, with its principal place of business listed as 14411 Commerce Way, Miami, Florida.

9.     Old Martin Construction, Inc. ("Old Martin Construction") was a Florida corporation incorporated on November 18, 2002, with its principal place of business listed as 1910 SW 17th Street, Miami, Florida.

10.     Defendant **JOSE G. MARTIN** was the sole incorporator and president of Old Martin Construction.

11.     Defendant **RAFAEL PIEDRA** posed as a straw buyer in exchange for a fee and allowed his identity and credit to be used in the purchase of 330 Alesio Avenue, Coral Gables, Florida (the "Alesio Avenue property").

12.     Defendant **SAMUEL MOREJON** posed as a straw buyer in exchange for a fee and

2

allowed his identity and credit to be used in the purchase of the 330 Alesio Avenue property and a second property located at 13243 SW 103rd Place, Miami, Florida (the "103rd Place property").

13.     Defendant **JOSE D. MARTINEZ** posed as a straw buyer in exchange for a fee and allowed his identity and credit to be used in the purchase of the 330 Alesio Avenue property and a second property located at 9645 SW 90th Avenue, Miami, Florida (the "90th Avenue property").

## COUNT 1
## CONSPIRACY TO COMMIT WIRE FRAUD
### (18 U.S.C. § 1349)

1.     Paragraphs 1 through 13 of the General Allegations section of this Indictment are realleged and incorporated fully herein by reference.

2.     From in or around November 2004, through in or around February 2008, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JOSE G. MARTIN,**
**SAMUEL MOREJON,**
**RAFAEL PIEDRA, and**
**JOSE D. MARTINEZ,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and transmitting and causing to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, for the purpose of executing the scheme, in

3

violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) using straw buyers to purchase residential properties in Miami-Dade County, Florida; (b) submitting false and fraudulent mortgage loan applications and related documents to lending institutions, thereby inducing the lending institutions to make mortgage loans to straw buyers for the purchase of the residential properties; (c) concealing the submission of the false and fraudulent applications and documents and the receipt and transfer of fraud proceeds; and (d) diverting fraud proceeds for their personal use and benefit.

## MANNER AND MEANS OF CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.      **JOSE G. MARTIN** identified certain residential properties in Miami-Dade County, Florida that could be used to defraud lenders. **MARTIN** recruited straw buyers who were willing, for a fee, to lend their credit histories and identities for the fraudulent purchase of the identified residences.

5.      One of the properties identified by **JOSE MARTIN** was the Alesio Avenue property. **MARTIN** orchestrated the sale of the Alesio Avenue property to three different straw buyers over a two year period, increasing the sale price from $550,000 in December 2004, to $850,000 less than one year later in November 2005, to $1,200,000 in December 2006.

## December 2004 Sale of Alesio Avenue Property

6.      In the first sale transaction of the Alesio Avenue property, **RAFAEL PIEDRA**

4

posed as a buyer of the Alesio Avenue property in December 2004. The purchase price for the Alesio Avenue property was $550,000.

7.     False and fraudulent mortgage loan applications and other related documents were prepared by and on behalf of **RAFAEL PIEDRA** and submitted to Franklin Mortgage to induce Franklin Mortgage to fund two mortgage loans on the Alesio Avenue property. The two mortgage loan applications prepared by and on behalf of **PIEDRA** each contained false representations concerning **PIEDRA**'s employment, income, intent to make the Alesio Avenue property his primary residence and other information necessary to assess his qualifications to borrow funds in the amounts of $440,000 and $110,000. Based on the materially false and fraudulent misrepresentations in the loan applications, Franklin Mortgage approved the mortgage applications.

8.     Franklin Mortgage wired the loan proceeds in interstate commerce to a title attorney in Miami-Dade County for disbursement at the closing of the sale of the Alesio Avenue property. After the closing, **RAFAEL PIEDRA** took title to the Alesio Avenue property by warranty deed on December 1, 2004.

9.     **JOSE G. MARTIN**, personally and through his company Old Martin Construction, was paid an aggregate amount of $23,000 for "repairs" on the Alesio Avenue property at the closing of the December 2004 sale.

10.     **RAFAEL PIEDRA** was paid $15,000 for acting as a straw buyer. As a straw buyer, **PIEDRA** allowed his identity and credit information to be used in the mortgage loan applications for the purchase of the Alesio Avenue property. He represented himself to be a true buyer of the Alesio Avenue property and the individual responsible for making payments on the loans although **PIEDRA** was not the true purchaser of the property.

5

## November 2005 Sale of Alesio Avenue Property

11.     In the second sale transaction of the Alesio Avenue property, **SAMUEL MOREJON** posed as a buyer of the Alesio Avenue property slightly less than one year after the closing of the sale to **RAFAEL PIEDRA** in December 2004.  The purchase price for the Alesio Avenue property in November 2005 was $850,000.

12.     False and fraudulent mortgage loan applications and other related documents were prepared by and on behalf of **SAMUEL MOREJON** and submitted to Freemont Investment to induce Freement Investment to fund two mortgage loans on the Alesio Avenue property.  The two mortgage loan applications prepared by and on behalf of **MOREJON** each contained false representations concerning **MOREJON**'s employment, income, intent to make the Alesio Avenue property his primary residence and other information necessary to assess his qualifications to borrow funds in the amounts of $680,000 and $170,000.  Based on the materially false and fraudulent misrepresentations in the loan applications, Freemont Investment approved the mortgage applications.

13.     Freemont Investment wired the loan proceeds in interstate commerce to Miami Title in Miami-Dade County for disbursement at the closing of the sale of the Alesio Avenue property. After the closing, **SAMUEL MOREJON** took title to the Alesio Avenue property by warranty deed on November 30, 2005.

14.     **JOSE G. MARTIN**, through his company Old Martin Construction, was paid $214,843.08, for "work performed" on the Alesio Avenue property at the closing of the November 2005 sale.

15.     **SAMUEL MOREJON** was paid $30,000 in part for acting as a straw buyer of the

6

Alesio Avenue property. His fee also included a payment for acting as a straw buyer on a second property, the 103rd Place property (more fully addressed below). As a straw buyer, **MOREJON** allowed his identity and credit information to be used in the mortgage loan applications for the purchase of the Alesio Avenue property. He represented himself to be a true buyer of the Alesio Avenue property and the individual responsible for making payments on the loans although **MOREJON** was not the true purchaser of the property.

### December 2006 Sale of Alesio Avenue Property

16.     In the third sale transaction of the Alesio Avenue property, **JOSE D. MARTINEZ** posed as a buyer of the Alesio Avenue property slightly more than one year after the closing of the sale to **SAMUEL MOREJON** in November 2005. The purchase price for the Alesio Avenue property in December 2006 was $1,200,000.

17.     False and fraudulent mortgage loan applications and other related documents were prepared by and on behalf of **JOSE D. MARTINEZ** and submitted to Resmae Mortgage to induce Resmae Mortgage to fund two mortgage loans on the Alesio Avenue property. The two mortgage loan applications prepared by and on behalf of **MARTINEZ** each contained false representations concerning **MARTINEZ**'s employment, income, intent to make the Alesio Avenue property his primary residence and other information necessary to assess his qualifications to borrow funds in the amounts of $960,000 and $240,000. Based on the materially false and fraudulent misrepresentations in the loan applications, Resmae Mortgage approved the mortgage applications.

18.     Resmae Mortgage wired the loan proceeds in interstate commerce to Miami Title in Miami-Dade County for disbursement at the closing of the sale of the Alesio Avenue property. **MARTINEZ** took title to the Alesio Avenue property by warranty deed on December 21, 2006.

7

19.     After the closing of the sale transaction, **JOSE D. MARTINEZ** failed to make payments on the loans obtained as part of the fraudulent scheme, causing the Alesio Avenue property to go into foreclosure in February 2008 and causing the lending institution to suffer substantial losses.

20.     **JOSE G. MARTIN**, through his company Old Martin Construction, was paid $210,500 for "work performed" on the Alesio Avenue property at the closing of the December 2006 sale.

21.     **JOSE D. MARTINEZ** was paid $58,750.50 in part for acting as a straw buyer of the Alesio Avenue property. His fee also included payment for acting as a straw buyer on a second property, the 90th Avenue property (more fully addressed below). As a straw buyer, **MARTINEZ** allowed his identity and credit information to be used in the mortgage loan applications for the purchase of the Alesio Avenue property. He represented himself to be a true buyer of the Alesio Avenue property and the individual responsible for making payments on the loans although **MARTINEZ** was not the true purchaser of the property.

22.     During the same period of time **JOSE G. MARTIN** was orchestrating the sales of the Alesio Avenue property, he used **SAMUEL MOREJON** and **JOSE D. MARTINEZ** as straw buyers to perpetrate fraud in the purchase of two additional properties in Miami-Dade County, Florida.

### November 2005 Sale of 103rd Place property to Samuel Morejon

23.     On the same date that **SAMUEL MOREJON** posed as a straw buyer in the purchase of the Alesio Avenue property, **MOREJON** acted as a straw buyer in the purchase of a second residence, the 103rd Place property.

8

24.     False and fraudulent mortgage loan applications and other related documents were prepared by and on behalf of **SAMUEL MOREJON** and submitted to First Franklin Loan Services to induce First Franklin Loan Services to fund two mortgage loans on the 103rd Place property. The two mortgage loan applications prepared by and on behalf of **MOREJON** each contained false representations concerning **MOREJON**'s employment, income, intent to make the 103rd Place property his primary residence and other information necessary to assess his qualifications to borrow funds in the amounts of $668,000 and $167,000. Based on the materially false and fraudulent misrepresentations in the loan applications, First Franklin Loan Services approved the mortgage applications.

25.     First Franklin Loan Services wired the loan proceeds in interstate commerce to Endeavor Title in Miami-Dade County for disbursement at the closing of the sale of the 103rd Place property. **SAMUEL MOREJON** took title to the 103rd Place property by warranty deed on November 30, 2005.

26.     After the closing of the sale transaction, **SAMUEL MOREJON** failed to make payments on the loans obtained as part of the fraudulent scheme, causing the 103rd Place property to go into foreclosure in January 2007 and causing the lending institution to suffer substantial losses.

27.     **JOSE G. MARTIN**, through his company Old Martin Construction, was paid $73,645.27 for "work performed" on the 103rd Place property at the closing of the November 2005 sale.

28.     **SAMUEL MOREJON** was paid $30,000 in part for acting as a straw buyer of the 103rd Place property. His fee also included payment for acting as a straw buyer on the Alesio Avenue property as discussed above.

9

### November 2006 Sale of 90th Avenue property to Jose D. Martinez

29.     In November 2006, less than one month prior to posing as a straw buyer in the purchase of the Alesio Avenue property, **JOSE D. MARTINEZ** posed as a buyer of a second residence, the 90th Avenue property.

30.     False and fraudulent mortgage loan applications and other related documents were prepared by and on behalf of **JOSE D. MARTINEZ** and submitted to First Franklin Loan Services to induce First Franklin Loan Services to fund two mortgage loans on the 90th Avenue property. The two mortgage loan applications prepared by and on behalf of **MARTINEZ** each contained false representations concerning **MARTINEZ**'s employment, income, intent to make the 90th Avenue property his primary residence and other information necessary to assess his qualifications to borrow funds in the amounts of $1,080,000 and $270,000. Based on the materially false and fraudulent misrepresentations in the loan applications, First Franklin Loan Services approved the mortgage applications.

31.     First Franklin Loan Services wired the loan proceeds in interstate commerce to Miami Title in Miami-Dade County for disbursement at the closing of the sale of the 90th Avenue property. **JOSE D. MARTINEZ** took title to the 90th Avenue property by warranty deed on November 30, 2006.

32.     After the closing of the sale transaction, **JOSE D. MARTINEZ** failed to make payments on the loans obtained as part of the fraudulent scheme, causing the 90th Avenue property to go into foreclosure in February 2008 and causing the lending institution to suffer substantial losses.

33.     **JOSE G. MARTIN**, through his company Old Martin Construction, was paid

10

$259,500 for "work performed" on the 90th Avenue property at the closing of the November 2006 sale.

34.     **JOSE D. MARTINEZ** was paid $58,750.50 in part for acting as a straw buyer of the 90th Avenue property.  His fee also included payment for acting as a straw buyer on the Alesio Avenue property as discussed above.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2 - 11
## WIRE FRAUD
## (18 U.S.C. §§ 1343 and 2)

1.     The allegations in paragraphs 1 through 13 of the General Allegations Section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around November 2004, through in or around February 2008, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JOSE G. MARTIN,**
**SAMUEL MOREJON,**
**RAFAEL PIEDRA, and**
**JOSE D. MARTINEZ,**

did knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

11

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by: (a) using straw buyers to purchase residential properties in Miami-Dade County, Florida;  (b) submitting false and fraudulent mortgage loan applications and related documents to lending institutions, thereby inducing the lending institutions to make mortgage loans to straw buyers for the purchase of the residential properties; (c) concealing the submission of the false and fraudulent applications and documents and the receipt and transfer of fraud proceeds; and (d) diverting fraud proceeds for their personal use and benefit.

## THE SCHEME AND ARTIFICE

4.      Paragraphs 4 through 34 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated fully herein by reference as a description of the scheme and artifice.

## USE OF THE WIRES

5.      On or about the dates and as to the individual defendants specified as to each count below, the defendants, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, as more particularly described in each count below:

12

| COUNT | APPROX. DATE | DEFENDANTS | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 2 | December 1, 2004 | **JOSE G. MARTIN** and **RAFAEL PIEDRA** | Wire transfer in the amount of $447,805 from Franklin Mortgage's account at Bank One NA in Chicago, Illinois, to the title attorney's account at Bank of America in the Southern District of Florida, relating to the sale of the property located at 330 Alesio Avenue, Coral Gables, Florida |
| 3 | December 1, 2004 | **JOSE G. MARTIN** and **RAFAEL PIEDRA** | Wire transfer in the amount of $110,000 from Franklin Mortgage's account at Bank One NA in Chicago, Illinois, to the title attorney's account at Bank of America in the Southern District of Florida, relating to the sale of the property located at 330 Alesio Avenue, Coral Gables, Florida |
| 4 | November 30, 2005 | **JOSE G. MARTIN** and **SAMUEL MOREJON** | Wire transfer in the amount of $678,805.40 from Freemont Investment and Loans' account at Capital Source Bank in Brea, California, to Miami Title's account at Suntrust Bank, in the Southern District of Florida, relating to the sale of the property located at 330 Alesio Avenue, Coral Gables, Florida |
| 5 | November 30, 2005 | **JOSE G. MARTIN** and **SAMUEL MOREJON** | Wire transfer in the amount of $169,658.50 from Freemont Investment and Loans' account at Capital Source Bank in Brea, California, to Miami Title's account at Suntrust Bank, in the Southern District of Florida, relating to the sale of the property located at 330 Alesio Avenue, Coral Gables, Florida |

13

| COUNT | APPROX. DATE | DEFENDANTS | DESCRIPTION OF WIRE COMMUNICATION |
|-------|--------------|------------|----------------------------------|
| 6 | December 21, 2006 | **JOSE G. MARTIN** and **JOSE D. MARTINEZ** | Wire transfer in the amount of $966,418.97 from Resmae Mortgage Corporation's account at J.P. Morgan Chase Bank NA in New York, New York, to Miami Title's account at Suntrust Bank, in the Southern District of Florida, relating to the sale of the property located at 330 Alesio Avenue, Coral Gables, Florida |
| 7 | December 21, 2006 | **JOSE G. MARTIN** and **JOSE D. MARTINEZ** | Wire transfer in the amount of $238,904.68 from Resmae Mortgage Corporation's account at J.P. Morgan Chase Bank NA in New York, New York, to Miami Title's account at Suntrust Bank, in the Southern District of Florida, relating to the sale of the property located at 330 Alesio Avenue, Coral Gables, Florida |
| 8 | November 30, 2005 | **JOSE G. MARTIN** and **SAMUEL MOREJON** | Wire transfer in the amount of $672,976.13 from First Franklin Loan Service's account at National City Bank in Indianapolis, Indiana, to Endeavor Title's account at Bank United, FSB, in the Southern District of Florida, relating to the sale of the property located at 13243 SW 103rd Place, Miami, Florida |
| 9 | November 30, 2005 | **JOSE G. MARTIN** and **SAMUEL MOREJON** | Wire transfer in the amount of $166,556.35 from First Franklin Loan Service's account at National City Bank in Indianapolis, Indiana, to Endeavor Title's account at Bank United, FSB, in the Southern District of Florida, relating to the sale of the property located at 13243 SW 103rd Place, Miami, Florida |

14

| COUNT | APPROX. DATE | DEFENDANTS | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 10 | November 30, 2006 | **JOSE G. MARTIN** and **JOSE D. MARTINEZ** | Wire transfer in the amount of $1,089,185 from First Franklin Loan Service's account at National City Bank in Indianapolis, Indiana, to Miami Title's account at Suntrust Bank, in the Southern District of Florida, relating to the sale of the property located at 9645 SW 90th Avenue, Miami, Florida |
| 11 | November 30, 2006 | **JOSE G. MARTIN** and **JOSE D. MARTINEZ** | Wire transfer in the amount of $269,527.50 from First Franklin Loan Service's account at National City Bank in Indianapolis, Indiana, to Miami Title's account at Suntrust Bank, in the Southern District of Florida, relating to the sale of the property located at 9645 SW 90th Avenue, Miami, Florida |

In violation of Title 18, United States Code, Sections 1343 and 2.

## CRIMINAL FORFEITURE

1.     The General Allegations and the allegations of Counts 1 through 11 of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America of certain property in which the defendant has an interest, pursuant to the provisions of Title 18, United States Code, Sections 982(a)(2) and 982(b), and the procedures set forth at Title 21, United States Code, Section 853.

2.     Upon conviction of any of the offenses charged in Counts 1 through 11 of this Indictment, defendants, **JOSE G. MARTIN, SAMUEL MOREJON, RAFAEL PIEDRA, and JOSE MARTINEZ**, shall forfeit to the United States any property constituting, or derived from, any proceeds which the defendant obtained, directly or indirectly, as the result of such violation, pursuant

15

to Title 18, United States Code, Section 982(a)(2) and 982(b).  All pursuant to Title 18, United States

Code, Sections 982(a)(2) and 982(b) and Title 21, United States Code, Section 853.


FOREPERSON


R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY


PETER A. FORAND
ASSISTANT UNITED STATES ATTORNEY


16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

CASE NO. _____

vs.

**CERTIFICATE OF TRIAL ATTORNEY\***

JOSE G. MARTIN,
SAMUEL MOREJON,
RAFAEL PIEDRA, and
JOSE D. MARTINEZ,

_____/
          Defendants.

**Superseding Case Information:**

Court Division: (Select One)

New Defendant(s)          Yes _____   No _____
Number of New Defendants          _____
Total number of counts          _____

| X | Miami | ____ | Key West |
|----|-------|------|----------|
| ____ | FTL | ____ | WPB | ____ | FTP |

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:      (Yes or No)      Yes
      List language and/or dialect      Spanish

4.    This case will take      7      days for the parties to try.

5.    Please check appropriate category and type of offense listed below:

      (Check only one)                              (Check only one)

| I | 0 to 5 days | _____ | Petty | _____ |
|---|-------------|--------|-------|--------|
| II | 6 to 10 days | X | Minor | |
| III | 11 to 20 days | _____ | Misdem. | |
| IV | 21 to 60 days | _____ | Felony | X |
| V | 61 days and over | _____ | | |

6.    Has this case been previously filed in this District Court? (Yes or No)      No
If yes:
Judge: _____      Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?      (Yes or No)      No
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____      District of _____

Is this a potential death penalty case? (Yes or No)      No

7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?      _____ Yes      X      No

8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?      _____ Yes      X      No

_____
PETER A. FORAND
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 682268

\*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: __JOSE G. MARTIN__          **Case No**: _____

Count No.: 1

Conspiracy to Commit Wire Fraud

 Title 18, United States Code, Section 1349

**\*Max. Penalty:**          Twenty Years' Imprisonment

Count Nos.: 2-11

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**:          Twenty Years' Imprisonment

 **\* Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **RAFAEL PIEDRA**          **Case No**: _____

Count No.: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:**      Twenty Years' Imprisonment

Count Nos.: 2, 3

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**:      Twenty Years' Imprisonment

\* **Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **SAMUEL MOREJON**          **Case No**: _____

Count No.: 1

Conspiracy to Commit Wire Fraud _____

 Title 18, United States Code, Section 1349 _____

**\*Max. Penalty:**        Twenty Years' Imprisonment _____

Count Nos.: 4, 5, 8, 9

Wire Fraud _____

Title 18, United States Code, Section 1343 _____

**\* Max. Penalty:**        Twenty Years' Imprisonment _____

 **\* Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: __JOSE D. MARTINEZ__        **Case No**: _____

Count No.: 1

Conspiracy to Commit Wire Fraud_____

 Title 18, United States Code, Section 1349_____

__*Max. Penalty:__       Twenty Years' Imprisonment_____

Count Nos.: 6, 7, 10, 11

Wire Fraud_____

Title 18, United States Code, Section 1343_____

__* Max. Penalty:__       Twenty Years' Imprisonment_____

 **\* Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**